IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CONNIE MICHELLE GRAY, next friend and personal representative of Alex Joseph Gray, deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:24-cv-384-ECM |
| | ) | [WO] |
| JIMMY ABBETT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

This case arises out of the death of Alex Gray.  Plaintiff, Connie Michelle Gray, is Alex Gray's mother and the personal representative of his estate.  She asserts state and federal claims against Tallapoosa County Sheriff Jimmy Abbett, Tallapoosa County Jail Administrator Al Wilson, Tallapoosa County itself, Geni Abernathy (a nurse employed at the Tallapoosa County Sheriff's Department), and Correction Officers A, B, and C. (Doc. 60).  The named Defendants move to dismiss all of Plaintiff's claims. (Docs. 61, 64). Plaintiff opposes those motions. (Docs. 70, 71).  Upon consideration, the motions are due to be granted in part and denied in part.

## I.  BACKGROUND

According to the second amended complaint, Alex Gray was arrested in April 2022 for various "drug related" offenses and was being detained in the Tallapoosa County Detention Center. (Doc. 60 at 8, para. 12).  On May 28, 2022, while Gray was still in the jail's custody, Myles Carter Mitchell Kellum was also taken into the jail's custody and

placed in Gray's cell. (*Id.* at 9, paras. 14–15). Kellum had managed to pass through the jail's security with fentanyl, allegedly "because he was not searched or strip searched." (*Id.* at 9, para. 15). Kellum offered Gray some of this fentanyl, which Gray accepted and ingested. (*Id.*). Gray became "unresponsive" and was ultimately taken to a hospital, though Plaintiff alleges that Gray's condition went unnoticed for several hours because corrections officers were not conducting routine checks, in violation of the jail's protocol. (*See id.* at 9–15, paras. 15–29). Despite the hospital's treatment, Gray passed away. (*Id.* at 16–17, para. 35).

Plaintiff initiated this lawsuit in state court on May 28, 2024, naming as defendants Abbett, Kellum, Tallapoosa County, and fictitious parties "A–Z." (*See* doc. 1-1). Abbett subsequently removed the case to this Court. (*See* doc. 1). On September 5, 2024, Plaintiff voluntarily amended her complaint, adding Wilson, Abernathy, and Correction Officers A, B, and C as Defendants. (*See* doc. 16). On Defendants' motions, (*see* doc. 22 at 4–9; doc. 33 at 4–8), the Court struck the amended complaint as an impermissible shotgun pleading, (doc. 59). In that order, the Court explained that the amended complaint constituted a shotgun pleading for three reasons. First, each count adopted all of the allegations of the preceding counts. (*Id.* at 5). Second, the amended complaint asserted multiple claims against multiple Defendants without properly distinguishing between them such that Defendants did not have fair notice of the specific claims brought against them. (*Id.* at 5–6). Finally, the amended complaint "list[ed] two Count [Two]'s and two Count [Five]'s," which added to the confusion caused by the pleading. (*Id.* at 6–7). Accordingly, the Court struck the amended complaint with instructions for repleading. (*Id.* at 8).

Plaintiff timely amended. (*See* doc. 60). The second amended complaint, which cures some of the foregoing deficiencies, asserts six claims: medical negligence/wanton conduct against Abernathy (Count One), failure to provide necessary medical attention against Tallapoosa County and Abernathy (Count Two), a violation of the Fourteenth Amendment against Abbett and Wilson (Count Three), wrongful death against all Defendants (Count Four), violations of the Eighth and Fourteenth Amendments against "Defendant Correctional Officers" and Abernathy (Count Five), and a deliberate indifference claim against Abbett and Wilson (Count Six). (*Id.* at 20–40, paras. 45–89). Defendants move to dismiss, (docs. 61, 64), arguing, among other things, that the second amended complaint remains a shotgun pleading, (*see* docs. 62, 65, 72, 73). Plaintiff opposes those motions. (Docs. 70, 71).

## II. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. § 1367. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. DISCUSSION

The Court first explains why the claims against Correction Officers A, B, and C are due to be dismissed. The Court then addresses Defendants' argument that Plaintiff's claims are due to be dismissed with prejudice because the second amended complaint remains an impermissible shotgun pleading. The Court agrees that the second amended complaint is

a shotgun pleading but ultimately determines that dismissal on this basis is without prejudice and grants Plaintiff another opportunity to properly plead her claims. Because Plaintiff will be given leave to amend, Defendants' motions to dismiss are otherwise denied without prejudice with leave to refile.

## A.      Correction Officers A, B, and C

The general rule is that "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). There's an exception to this general rule where the use of a fictitious "label is, 'at the very worst, surplusage,' because the plaintiff's description of the defendant is 'sufficiently clear to allow service of process.'" *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 & n.6 (11th Cir. 1992)); *see also id.* ("[O]ur precedent has always required an unambiguous description of a defendant that enables service of process."). Plaintiff argues that her descriptions of the Correction Officer-Defendants are sufficient to bring them within this "narrow," *Kabbaj v. John Does 1–10*, 600 F. App'x 638, 641 (11th Cir. 2015), "limited," *Smith v. Comcast Corp.*, 786 F. App'x 935, 940 (11th Cir. 2019), exception. (Doc. 70 at 30–32; doc. 71 at 27–29). She is mistaken.

Plaintiff describes officer "A" as an officer "who would have been in charge of searching inmates and the intake process of inmates." (Doc. 60 at 6, para. 6). Officer "B" was an officer "who would have been in charge of checking the medical holding cell, making the decision to move Alex Gray[,] and monitoring that jail cell in minute blocks." (*Id.* at 7, para. 7). And officer "C" supervised the other two. (*Id.* at 7, para. 8 ("Correction officer 'C' . . . would have supervised the correction[] officers described as 'A' and/or 'B'

4

and also had knowledge of the medical issues surrounding Alex Gray and the intake of Myles Kellum.")).  But it's not clear from these allegations that Plaintiff even knows for certain that officers A, B, and C exist, rather than simply presumes that officers fitting these descriptions *likely* exist. *See Perkins v. Crook*, 2026 WL 360773, at \*1–2, 4 (M.D. Ala. 2026) (striking claims against fictitious parties identified as, for example, "the correctional officer assigned to monitor and provide security for the dorm the [p]laintiff was housed in at the time of inmate Carter's assault on the [p]laintiff" and "the cube officer assigned to monitor the dorm the [p]lainitff was housed in when inmate Carter assaulted the [p]laintiff").  Such scant detail falls short of the "surplusage" standard. *Compare Dean*, 951 F.2d at 1215–16 & n.6 (determining that the pro se plaintiff's describing a fictitious defendant as the "Chief Deputy of the Jefferson County Jail John Doe" was sufficient because it would permit "service of process on the 'Chief'"), *with Richardson*, 598 F.3d at 738 (identification of defendant as "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute" fell outside of *Dean*'s "limited exception" because it "was insufficient to identify the defendant among the many guards employed at [the Charlotte Correctional Institute]"), *and Vielma*, 808 F. App'x at 880 (affirming dismissal of claims against various John Doe defendants with descriptions ranging "from the highly generic (e.g., 'a male detective,' 'one of the officers at the hospital,' or 'an FBI Agent') to the ever-so-slightly less generic (e.g., '[a] female white officer about 5 feet 10–11 inches in height' or 'a middle-aged white male [officer]')" (alterations in original)), *and Smith*, 786 F. App'x at 940 (the plaintiff's descriptions of fictitious defendants were too vague where he merely

5

"identifie[d] them as area supervisors" with "widely[ ]shared characteristics" because these descriptions did "not necessarily pick out one Comcast employee").

The claims against Correction Officers A, B, and C are therefore due to be dismissed.

**B.      Shotgun Pleading**

A shotgun pleading is a complaint that fails to conform to the Federal Rules of Civil Procedure's pleading requirements. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  The "unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.  "[A] district court that receives a shotgun pleading should strike it and instruct counsel to replead the case." *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020).  "When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleadings grounds." *Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2021) (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018)).

Defendants submit that Plaintiff's second amended complaint—just like her last one—is due to be stricken as a shotgun pleading. (Doc. 62 at 3–5; doc. 65 at 3–6).  The thrust of their argument is that the operative pleading continues to lump Defendants and causes of action without properly distinguishing between them. (Doc. 62 at 3 ("[The second amended complaint] continues to recycle the same generalized allegations across multiple

6

counts and lump[s] all [D]efendants together without distinction."); doc. 65 at 6 ("In sum, the [s]econd [a]mended [c]omplaint remains a quintessential shotgun pleading because it does not 'give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" (quoting *Weiland*, 792 F.3d at 1323)). These arguments are well taken.

Count One raises a "medical negligence/wanton conduct" claim against Abernathy. (Doc. 60 at 20–25, paras. 45–50). In that Count, Plaintiff alleges that Abernathy owed Alex Gray twenty-four distinct duties.[1] (*Id.* at 20–22, para. 48). These included many seemingly identical duties, including the duties to "properly assess Alex Gray's needs," "assess and observe Alex Gray," "timely and properly assess Alex Gray and follow-up on the assessment to ensure that Alex Gray is receiving timely and adequate treatment to meet his medical needs," and "properly and timely assess Alex Gray." (*Id.*; *see* doc. 65 at 5 ("These allegations are substantively identical, yet Plaintiff's decision to bifurcate them leaves [Abernathy] unsure whether Plaintiff intends to assert distinguishable causes of action against her.")); *Cramer v. Florida*, 117 F.3d 1258, 1261 (11th Cir. 1997) (discerning a shotgun pleading where the complaint was "so disorganized and ambiguous that it [wa]s almost impossible to discern precisely what . . . the[] appellants were claiming"). Plaintiff

---

[1] Plaintiff alleges Abernathy breached these duties in twenty-five different ways. (*See* doc. 60 at 22–24, para. 49). Though Plaintiff touts this as a virtue, (doc. 71 at 8 ("[E]ven a cursory review of the [s]econd [a]mended [c]omplaint establishes that each count contains factual allegations specific to the count, and even more than the [f]irst [a]mended [c]omplaint. For example, Count [One] . . . contains **twenty-five** allegations of failures in the care provided by Defendant nurse Abernathy . . . ." (emphasis in original))), it actually presents an additional shotgun pleading issue, *see Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337 (S.D. Fla. 2012) ("Count I of Garcia's Complaint epitomizes a form of 'shotgun' pleading. Garcia begins Count I by alleging that Defendant owed a duty to Garcia . . . . Garcia then proceeds to allege at least twenty-one ways in which Defendant breached this duty." (internal citation omitted)).

also lists duties seemingly unrelated to Count One, including to "provide employees, staff, and/or medical professionals trained in the proper manner to care for and treat patients" and "employ personnel, staff[,] and/or medical professionals who understand proper procedures to be followed when attempting to give care and assistance to a resident." (*See* doc. 60 at 21–24, paras. 48–49). These latter allegations would appear related to a negligent hiring, training, or supervision claim—discrete causes of action with distinct elements and theories of liability. *See Weiland*, 792 F.3d at 1322–23 ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.").

Count Two, a claim against Abernathy and Tallapoosa County for "failure to provide necessary medical attention," is confusing for at least two reasons. (Doc. 60 at 25–27, paras. 51–55). First, the claims against Abernathy appear entirely duplicative of the allegations against her in Count One. (*See id.* at 26, para. 55 (alleging that Abernathy "fail[ed] to provide timely and correct medical care and attention to Alex Gray . . . demonstrating negligence and/or wantonness")). Second, though Count Two does not assert a cause of action against Abbett, it includes an allegation that he "waited until Gray was beyond the point of where his health could improve with medical treatment to have him released," appearing to reference a standalone deliberate indifference claim against him.[2] (*Id.* at 26, para. 54). Both issues indicate that the second amended complaint

---

[2] Similarly, though Count Three only names Abbett and Wilson, it includes an allegation that "[a]ll Defendants were active participants in creating the[ alleged] policies, practices[,] and customs and had knowledge that drug smuggling and ingestion was a widespread occurrence in the Tallapoosa County jail." (Doc. 60 at 28, para. 59). Accordingly, it is not clear which Defendants are implicated in Count Three, either.

8

is a shotgun pleading. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211 (11th Cir. 1999) (explaining that a complaint was a shotgun pleading because, among other defects, it "include[d] three counts alleging fraud that are apparently duplicative"); *Lowe v. Delta Air Lines, Inc.*, 730 F. App'x 724, 729 (11th Cir. 2018) (per curiam) (styling a complaint a shotgun pleading that included "duplicative and overlapping" claims).

Counts Three and Six present additional issues. The claims asserted in these Counts seem identical, as both assert deliberate indifference claims against Abbett and Wilson. (*Compare* doc. 60 at 27–30, paras. 56–63, *with id.* at 37–40, paras. 81–89). Employing some guess work, Plaintiff seems to be asserting an official capacity claim in Count Three (i.e., a claim against Tallapoosa County itself), because Count Six asserts a claim against Abbett and Wilson "in their individual capacit[ies]." (Doc. 60 at 37). This theory is also supported by the fact that Count Three claims Alex Gray died as a result of "an unconstitutional policy, practice, and/or custom," (*id.* at 27, para. 56)—but then again, so does Count Six, (*id.* at 37, para. 81). *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) ("[T]o impose [42 U.S.C.] § 1983 liability on a municipality, a plaintiff must show[] . . . that the municipality had a custom or policy that constituted deliberate indifference to [a] constitutional right . . . ."). In any event, the Court should not have to guess what claims Plaintiff is trying to assert, nor should Defendants have to speculate as to what claims they must respond. *See Weiland*, 792 F.3d at 1323; *accord Sledge v. Goodyear Dunlop Tires N.A., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) (per curiam) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a responsi[v]e pleading constitutes shotgun pleading.").

9

Plaintiff's second amended complaint also continues to lump Defendants together such that it is, at times, impossible to tell which Defendants are accused of what conduct. Plaintiff repeatedly refers to "Defendants" without distinguishing between them. (*See, e.g.*, doc. 60 at 11, para. 21 ("Defendants did not administer naloxone at the Tallapoosa County Jail on May 28, 2022[,] to Alex Gray."); *id.* at 14, para. 28 ("Defendants failed to properly search Kellum prior to allowing him in the presence of Gray by failing to carry out their duties to search new inmates."); *id.* at 15, para. 29 ("Video later surfaced and showed that Alex ingested fentanyl, which should have been caught during observation or monitoring by the Defendants.")).  For instance, Count Four alleges that "Defendants each failed to act in a timely and proper manner to provide accurate and truthful information to medical personnel which would have saved Alex's life." (Doc. 60 at 31, para. 68).  But that allegation could not plausibly be meant to apply to Tallapoosa County.  Likewise, both Counts Four and Five contain lengthy paragraphs that, contrary to Plaintiff's contentions, do indeed lump Defendants together, leaving Defendants (and the Court) to guess which allegations apply to which Defendants.  Here's an illustrative example:

> Moreover, these Defendants acted in concert or individually, either directly or indirectly by actions of their agent, by (i) failing to properly search Kellum; (ii) placing Kellum in the same jail cell as Gray; (iii) failing to timely review, observe or check in on Gray on or about May 28, 2022 (the Saturday of the Memorial Day weekend 2022), especially after the fentanyl was ingested; (iv) failing to administer naloxone by any of the Defendants for the safety and revival of Gray; (v) failing to train Tallapoosa Jail staff in the safe, timely and effective administration of naloxone; (vi) failing to timely transfer Gray directly to a trauma center after Gray had ingested Fentanyl; (vii) failing to notify EMS personnel or hospital staff, at all or in a timely manner, of what happened to Gray, so that hospital

staff could timely address his needs, since this was a clear medical emergency and time was of the essence; (viii) further, instead of providing true facts of what happened to Gray (e.g., presenting false evidence), Defendants Abbett, Wilson, Tallapoosa County, Abernathy and the Correctional officers A, B, and C created an alternative story concerning an independent heart attack, with unknown cause and source, being the cause of Gray's medical distress at the time; (ix) failing to appropriately and sufficiently staff the Tallapoosa Jail on May 28, 2022 with competent staff for the safety of Gray and/or timely and properly meet his medical needs.

(*Id.* at 31–32, para. 69; *see id.* at 35–36, para. 80 (doing the same thing in Count Five)). But surely Plaintiff is not alleging that a nurse failed to properly search an inmate, that a county sheriff should have personally administered naloxone to Alex Gray, or that the unnamed Correction Officers are to blame for the allegedly inadequate staffing of the jail.[3]

Despite these many faults, Plaintiff argues that the second amended complaint contains sufficient detail regarding "the events as they unfolded concerning Alex Gray at the Tallapoosa County Jail." (Doc. 71 at 3; *accord* doc. 70 at 4 ("[E]ven a cursory review of the [second amended c]omplaint establishes that each count contains factual allegations specific to the count.")). That misses the point. The second amended complaint is not a shotgun pleading because it says too little. It's a shotgun pleading because it says too much without specifying which allegations relate to which claims, and which claims are asserted against which Defendants.

---

[3] The Court also notes that Plaintiff's phrasing, even where specific, occasionally invites confusion as to whom an allegation relates. (*See, e.g.*, doc. 60 at 35, para. 79 ("*The Defendants Abernathy*, . . . took no action to address such serious medical needs . . . ." (emphasis added)); *id.* at 36, para. 81 (alleging deliberate indifference on the part of "these Defendants" after a string of allegations that appear to relate to all Defendants in some places and specific Defendants in others)).

Because the Court has already stricken one complaint as a shotgun pleading, Defendants ask the Court to dismiss Plaintiff's claims with prejudice this time around. (Doc. 62 at 5; doc. 65 at 6). The Court has the authority to do so. *See Barmapov*, 986 F.3d at 1326 ("Here, Barmapov was represented by counsel, the district court dismissed his first amended complaint after explaining why it was a shotgun pleading, and the court gave him a chance to try again. Barmapov squandered that opportunity by filing another shotgun pleading. Under this circumstance, we have no doubt that the district court did not abuse its discretion."). All the same, a comparison of the amended complaint with the second amended complaint reveals that Plaintiff did attempt to cure the deficiencies identified in the Court's previous order. For example, she no longer incorporates by reference all preceding allegations in each count. Accordingly, the Court will grant Plaintiff the opportunity to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). But Plaintiff is expressly warned that a third failure to properly plead her claims may result in dismissal with prejudice. *See id.* (stating that leave to amend need not be given in the face of "repeated failure to cure deficiencies by amendments previously allowed").[4]

---

[4] The deficiencies identified in this Order are not intended to constitute a definitive laundry list of every single pleading problem presented by the second amended complaint. As the list the Court *has* provided should make clear, the second amended complaint suffers from a number of defects, and the Court has attempted to provide as much guidance as possible while also recognizing that the shotgun pleading doctrine is intended in part to *conserve* scarce judicial resources. *See Vibe Micro*, 878 F.3d at 1295. The Court is under no obligation to craft a compliant complaint for Plaintiff—much the same way that courts cannot parse defective complaints "in search of a potentially valid claim," as that "would give the appearance of lawyering for one side of the controversy." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1355 n.6 (11th Cir. 2018). So while districts courts "should explain how [an] offending pleading violates the shotgun

## IV.  CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED as follows:

1.      Defendants' motions to dismiss (docs. 61, 64) are GRANTED in part and DENIED in part.

      a.      Plaintiff's second amended complaint (doc. 60) is STRICKEN as an impermissible shotgun pleading.

      b.      The claims against Correction Officers A, B, and C are DISMISSED.

      c.      The motions to dismiss are otherwise DENIED without prejudice, with leave to refile at a later stage as appropriate.

2.      **On or before July 8, 2026,** Plaintiff shall file a third amended complaint that complies with Federal Rules of Civil Procedure 8 and 10 and with all of the directives contained in this Order.  Failure to do so may result in the dismissal of Plaintiff's claims with prejudice.

DONE this 24th day of June, 2026.

            /s/ Emily C. Marks
           EMILY C. MARKS
           UNITED STATES DISTRICT JUDGE

---

pleading rule so that the party may properly avoid future shotgun pleadings," *Vibe Micro*, 878 F.3d at 1296, the Court has discharged that duty.  In addition to complying with all the directives included in this Order, Plaintiff's counsel are advised to carefully consider the ample shotgun pleading jurisprudence in this circuit before submitting a third amended complaint. *Cf. Barmapov*, 986 F.3d at 1326–32 (Tjoflat, J., concurring) (writing separately to provide direction as to shotgun pleadings "to guide lawyers in this Circuit through the pleadings stage").